Good morning. My name is Carl Anuta. I'm the attorney representing Mr. Chuck. We're here today because Mr. Chuck has been denied his pension benefits. Basically, we're here because the district court didn't apply the proper standard of review on summary judgment and because Hewlett Packard, again, because this is not the first time Hewlett Packard has been in this situation, they have again refused to follow the dictates of ERISA, the dictates of the ERISA regulations, and the dictates of this Court and most of the other courts in the country. Well, counsel, let's start with the statute of limitations issue. The district court, as I read the record, denied or held that the statute of limitation was a bar that the notice given in January 28, 1981, triggered a 6-year max and the filing didn't occur until, what, 2001? Correct. Okay. Actually, I think it was late 2000 when the filing occurred. But here's what HP has basically argued. We sent you a letter in 81 that said, here's a check, and we sent you a letter in 92 that said, we're not going to pay any benefits. Which part of no don't you understand? The problem is, while that's a superficially attractive argument, it's got three fundamental errors. First, this is an ERISA case. There's a statute that says specific things have to be in a letter denying pension credits, including a description of what's the statute of limitations and what is the process that you as the claimant get to do for an appeal. Secondly, this was a summary judgment motion that the Court was considering. If you look at the facts of the case — Well, there's two limitation issues at issue, Your Honor. One is the internal contractual, as they — as HP calls it. There are specific limits in the plan that you have to — in order to file your appeal within the plan. Of course, Mr. Chuck didn't know that because they — even though he asked for 12 years, they never gave him the plan. So he never saw what those were until we sued, and then they finally produced the plan and saw that there was a — a ability to file an administrative appeal. Secondly, there's the ERISA statute of limitations that is the comparable State statute. In this case, there's no dispute by the parties. That's six years. That runs from the time when Mr. Chuck was denied his pension or when he should have known he was denied his pension. And that's the key issue. All right. What is the date that you rely on? As I understand, the district court held that the notice was dated January 28th, 1981, and they took that as the notice of a denial. What's — what date would you rely on? The date when Mr. Chuck was denied his pension was when he turned 65 and his pension came due and they didn't pay. That was in 2000. The district court ignored, in part, the form that came with the letter in 1981 that said very clearly an HP drafted the form. An HP crossed out parts of the form, but they didn't cross out this part that said if you do not elect a lump-sum payment, your pension will be paid as an annuity when you turn 65. Is your position that he did not elect a lump-sum payment? That's correct. He never sent — you have to send something back in to elect a lump-sum. He never sent anything back in. Didn't they also send him a check with the letter in 1981? They did send him a check, which he interpreted as a partial payment. But they sent him a check. It's not clear to me in the record, but I assume that he cashed that check? He did cash the check. And in his mind, that was a partial payment, but he did — he wanted the rest of his pension. And he immediately wrote the company and said, you know, I got your check, but you're basing your calculations on the wrong pension credit. I have 12.4 years' service, here's these memos, and there's no dispute now that we've sued. They agreed. He should have been given 12-point years' credit. If we go forward 10 years, he continued to write Hewlett-Packard. And he got another letter in 1992 which referenced the payment of the $3,200. And again, asserted Hewlett-Packard's position that no further benefits were due in Owing. Correct. And what was fundamentally wrong was under ERISA and under the regulations and under your cases, including a decision by, I believe, Judge White in the White v. Jacobs case, that letter had to have certain things in it to constitute a denial. An employer cannot just — a plan cannot just say, no, they have to tell the claimant their rights. That's why it's important that this is an ERISA case. In a normal situation where you didn't have a statute that required someone in their notice of denial to tell people what their rights were and what their statute of limitations was, sending a letter that said, no, we're not going to pay might be enough to trigger it. In this case, of course, on summary judgment, when you construe the facts in favor of Mr. Chuck instead of H.P., the district court probably should have said, as much as I would like summary judgment in my favor, they should have said, there's a fact dispute here. A jury's got to decide whether a reasonable person, having gotten this letter, knowing nothing about their rights and knowing that ERISA requires some sort of disclosure, would they have known? That's a fact dispute probably that should have precluded summary judgment right there. But if you look at the case law, and we've cited a host of cases in our briefs. But some of the cases you cite, counsel, the White case, for instance, deals with contractual limitations. And one might surmise that's true because there'd be no judicial review. Here we have ERISA where judicial review is provided. Why should we construe these cases the same as contractual cases? Because to do otherwise would make the whole point of ERISA, the statute and the regulations which require that disclosure of rights, meaningless. Because a plan could always just send a no, or they could say no over the phone and say, we told them. And the statute of limitations, as the way H.P. would interpret it, would run while they sat back and said, we don't have to disclose anything. And it's only if they sue us that we can say, oh, well, there's this also, this contractual limitation. It would make no sense at all to have a statute of limitations, to have ERISA say you must disclose all this information so that a claimant has notice of their rights. But that doesn't apply to the statute of limitations. In ERISA, Congress didn't say, this disclosure requirement only applies to contractual limitations. They said, you've got to disclose. And the regulations make it clear. You've got to disclose. Are you arguing for a per se rule, that any violation in 1133 prevents the statute of limitations from being triggered? I hadn't thought about it in those terms, Your Honor. What I'm always — what I was arguing for, actually, was the statute says and the regulations say you've got to disclose. If you don't disclose, it doesn't trigger the statute. That's what you held in White. And, I mean, I thought the opinion was almost prophetic. It says, to allow a plan to bar a claimant's untimely appeal when the claimant was improperly notified of his or her right to appeal would circumvent the policy of ERISA. That's at page 351. That's what we're talking about here. And so what HP has set up for you is we can violate the policy of ERISA if it's a statutory SOL, but we can't do it internally contractually, if it's a contractual SOL. That makes no sense. I'd like to reserve the remaining time if there's no question. Thank you, Counsel. Good morning, Your Honors. If it pleases the Court, my name is Joe Bush. I'm a Gibson Dunn and Crutcher, also in Southern California. At least we have a sunny day starting here today, as I had yesterday when I left town. Judge Nelson's questions go to something of the heart of the matter, and that we should not confuse the exhaustion of administrative remedy under Section 503 for the running of a shorter statute of limitations. Counsel, you better say it before the microphone so your voice will be recorded. Oh, I'm sorry. As opposed to a statute of limitations which is shorter than the ERISA statute of limitations, and then the ERISA statute of limitations. Many plans, as we saw in the White case and a few of the other cases, had statutes of limitations of three years based upon the time at which a claim was filed, and you could have that extinguished. That was a situation in the Lamantia case, which Counsel provided in a letter to the Court yesterday. The statute of limitations under the plan was shorter than the ERISA statute of limitations. So what we're talking about here is the running of the statute of limitations. The regulations under Section 503 do not require an expression as to what the statute of limitations are. Rather, it says that you are to notify the participant of the period of time in which they are to perfect their administrative appeal. And if you fail … Counsel, could I just interrupt for a moment and tell you what really troubles me about this case? Your argument seems to put the burden on the claimant to learn of his rights. How do you reconcile this with ERISA's provisions expressly bringing the burden on benefit plans to inform the participants of their rights to challenge denials? And here, according to the record, the claimant was not so informed. And as this Court has recognized in other cases, that is an independent violation which gives rise to another cause of action, potentially, but still governed by the ERISA statute of limitations. It could be six years for breach of fiduciary duty from the date of the incurrence of it, or it could be six years based upon the Oregon statute for violation of a statutory duty. It could be any of those things, but there is a remedy for that, for having done that. And I believe, as you have expressed in a prior case, Your Honor, the rule is, when did the participant or when did the individual know that they were injured? That's the rule in this circuit in terms of the writing of the statute of limitations. What would that date be from your point of view? Your Honor, I think, as the Court in Wetzel says, when is there a clear and continuing repudiation? And it's very clearly at least March 6th, 1992. Now, the Court below cited to this letter, in her opinion, although she did not base it, she said something on this letter. This letter meaning what? The March 6th, 1992 letter. It's in the supplemental excerpts of record at page 120. And it's very clear. It tells Mr. Chuck that he received his payment from the plan back in 1981, and it says no further retirement benefits are payable from our U.S. plan. That's a very clear repudiation of his rights. And the statute of limitations, at a minimum, should have continued at that time. When you go back and you look at 1980, 1981, the form that counsel referred to is excerpts of record page 44, the retirement benefit form, where it says you can select possibly an annuity. But then on the next page, page 45, everything is crossed out. The only benefit, which this form says he is entitled to, is a lump sum payment payable either as soon as possible after his date of termination. Remember, he terminated December 19, 1980, or January 31, 1981. He didn't — But what about his constant request to have copies of the plan? Excuse me. I'm sorry. What about his constant request to have copies of the plan, which were not complied with? Why wouldn't that toll the statute? There are a couple of issues there, Your Honor. First of all, that doesn't go to the issue of the repudiation of his claim. That goes to a potential second violation, as I said earlier. Secondly, if you look closely at his declaration, he submitted to this Court — excuse me — to the Court below copies of all of the letters. And in her findings, she found that the first written request was dated in July of 2001. She can look, remember, at the underlying letters, which is what she did. And she had those before her. But why would it have to be in writing? That's what the statute says under Section 503 — 502c, I'm sorry, Your Honor. I'm not sure, Mr. Bush, you've answered the question, though. I think Judge Nelson's question was, why did it affect the tolling of the statute of limitations? Because Hewlett-Packard didn't advise this fellow of what his recourse was, given their denial. That would go to the ability under Section 503 to then sue. We could not have raised the defense of exhaustion of administrative remedies. But when there has been a clear and continuing repudiation of the right, and the statement in the March 1992 letter, to the effect, you have no further rights under the plan, it's at that point when he is charged. I believe, as Judge O'Scanlan once said, the plaintiff is still charged with trying to understand and determine the law. The statute of limitation is something that's imposed by the law. It's not found in the regulations. The regulations do not impose on the claims administrator or the plan administrator the obligation of disclosing what the statute of limitations might be. This is not a situation that we have in the cases where there's an equitable estoppel, which is what counsel has argued for. In those cases, there is affirmative conduct by the defendant, which lulls the participant into not filing a lawsuit. The case in the LaMantia case, where voluntary plan administrators said to the participant, we'll leave your claim open so that you can fully develop your medical records and provide us with additional time. Some of the other cases cited by counsel in his moving brief, where the defendant said, don't worry about suing, we will not raise the statute of limitations as a defense. There is no affirmative conduct, which is what is required in this circuit to have equitable estoppel. And what we have here, again, in March of 1992, you are not in, there are no further benefits under this plan. And his requests for copies of the plan, remember in his declaration he says these are found in the exhibits, he didn't give you those exhibits, he did give them to the court below. And if you look at his complaint, look at the first cause of action and the second cause of action, they are both in the excerpts of record. His claim is based on demands made in 2001. That's in the complaint. And in 2001, it had been 20 years since he had received a distribution of his benefit. We went over 10 years. His benefits were distributed to him at the end of January of 1981. There was no further communication from him until November 21, 1991. What about the default argument that Mr. Anuta makes that he reasonably interpreted the correspondence to indicate that he would be entitled to benefits at age 65? Again, if you look at page 45 of the excerpts of record, all of the annuity options to which he would be entitled at age 65 are crossed off. The only one is a lump sum payment representing a 30% distribution, and even that was disabused by the March 1992 letter, where it said no further benefits under the plan. And if I have any other questions, Your Honor, I think my time is up. Thank you, Mr. Bush. Mr. Anuta, you have some reserved time. Thank you. First, let's look at that benefit claim form. It's on page 44 and 45 of the excerpt of record. And what's not crossed out is the clear language which should have been, and the inferences from it should have been interpreted in Mr. Chuck's favor, which says an annuity will be paid at 65 if you don't elect something else. They've crossed out the sections to elect something else. Second, let's look at the issue of the declaration of Mr. Chuck and the — and what he was claiming for. Of course, the complaint doesn't allege damages for not giving him the plan previously. You can only go back so far on damages. But his declaration, which lists all of the times he asked for the plan, should have been given credence, not H.P.'s interpretation of his stuff. What the district court did was they interpreted the facts like H.P. wanted them to interpret it. Oh, he didn't really ask for it. He did. If you interpret the facts in his like, he clearly did. Third, the clear and continuing repudiation argument that Mr. Bush makes, I think he misspoke. He said that was from Wetzel. That's actually from Martin. The Wetzel case says that the issue is whether the benefits had been actually denied or the insured had reason to know the claim had been denied. And the issue is — the precise issue is, what does denied mean? Does it just mean saying no? Can the plan ignore the requirements of the statute? The idea that Mr. Bush is presenting to you, which is, oh, when Congress said you got to tell him all this stuff, they only meant ask the contractual plan limitation. Where is that in the statute or the regulations? It does not exist. Those requirements for disclosure exist because the plan is a fiduciary. It has both a legal and a fiduciary obligation to this man to tell him he's got some way to appeal this decision. They never did that. There's no dispute. They never did that. Not a single letter ever gave him any clue that there was an appeals process, much less offered it to him, or, as LaMantia, which is the most recent case, talks about, they didn't even tell him that there was a statute of limitations. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: D.W. Nelson, O'scannlain, Burns